IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH WILLIAM JOHNSON, JR., | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 08-3346 (JBS/AMD) |
| v. | |
| BSP ADMINISTRATOR SULLIVAN, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Mr. Ralph William Johnson, Jr.
533076/334072C
East Jersey State Prison
Lock Bag R
Rahway, NJ 07065
    Plaintiff pro se

Susan Marie Scott, Deputy Attorney General
OFFICE OF THE NJ ATTORNEY GENERAL
RJ Hughes Justice Complex
PO Box 112
Trenton, NJ 08625
    Attorney for Defendants George Hayman, Daniel Hayes, and
    Anthony Kohanski

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This matter is before the Court upon Defendants' unopposed motion to dismiss and/or for summary judgment [Docket Item 28]. Plaintiff Ralph William Johnson, Jr., proceeding pro se, is an inmate who, at the time the events underlying this lawsuit transpired, was confined at Bayside State Prison ("BSP") in Leesburg, New Jersey. On the morning of March 31, 2008,

Plaintiff refused to comply with the orders of Defendant Officer Anthony Kohanski requiring that Plaintiff exit his residential unit. Plaintiff elected instead to punch Officer Kohanski in the face and to violently resist the efforts of Officer Kohanski, Defendant Officer Daniel Hayes, and other officers restrain him, and he was injured during the course of the officers' efforts to subdue him.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that the officers used excessive force upon him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants moved to dismiss and/or for summary judgment [Docket Item 28], and Plaintiff failed to oppose Defendants' motion. For the reasons set forth below, the Court will grant Defendants' motion in its entirety.

## II.  BACKGROUND

### A.  Facts

Plaintiff, who is presently incarcerated at Southern State Correctional Facility ("SSCF"), was incarcerated at BSP when the events at issue in this lawsuit took place. (Gentilini Decl. Ex. A at 10.) At approximately 7:50 a.m. on the morning of March 31, 2008, Defendant Kohanski, a corrections officer at BSP, was conducting a "routine wing search" of the "A" wing at BSP, the wing in which Plaintiff was at the time confined. (Maginnis Decl. Ex. A at 19.) During wing searches, inmates are required

to vacate the wing and report to the "dayroom." (Id. at 17.) As the inmates were exiting, Defendant Kohanski walked to the back of the wing. (Id. at 19.) When Defendant Kohanski reached the rear of the wing, he turned around and observed that Plaintiff had not vacated the wing in accordance with his previous order. (Id.) Defendant Kohanski ordered Plaintiff to exit the wing, and Plaintiff again refused to comply. (Id.) For the third time, Defendant Kohanski ordered Plaintiff to leave the wing. (Id.) Plaintiff again refused to comply, and instead said, "[f]uck you, [b]itch," approached Officer Kohanski, and punched him in the face with a closed fist. (Id.)

    A struggle ensued.  Defendant Kohanski first called for assistance, and then grabbed Plaintiff around the waist and attempted to pull him to the ground. (Id. at 21.) Plaintiff resisted Officer Kohanski's efforts to restrain him by "swinging his arms and kicking" Kohanski. (Id.) Defendant Hayes, the first officer to respond to Defendant Kohanksi's call, arrived at the scene, and, to assist Kohanski's efforts to bring Plaintiff to the ground, grabbed Plaintiff's ankles and pulled his feet out from under him. (Id. at 22.) Plaintiff fell, landing face-first on the floor. (Id.) Defendant Hayes then ordered Plaintiff to cease struggling and put his hands behind his back, but Plaintiff "would not comply and kept punching and kicking" the officers. (Id.) By this time, multiple corrections officers had arrived on

3

the scene, and numerous officers ordered Plaintiff "to stop resisting and put his hands behind his back." (Id. at 12.) Plaintiff refused to comply, continuing "to swing and kick at the responding Officers." (Id.)

Ultimately, using what Sergeant Parsons described as "the minimum amount of force necessary" to control Plaintiff, (id. at 17), the officers were able to restrain and handcuff Plaintiff, who continued to struggle and fight with the officers as they attempted to subdue him. (Id. at 23.) As the officers attempted to escort Plaintiff to the infirmary to treat the injuries he had sustained during the fracas, Plaintiff remained "combative and uncooperative," making "several attempts to break free of the escorts by dropping to the ground and attempting to kick at the Officers." (Id. at 31.)

At the prison infirmary, Plaintiff was evaluated by Dr. Briglia. (Gentilini Decl. Ex. C at 2.) Plaintiff complained to Dr. Briglia of pain in his face and his left ankle. (Id.) Dr. Briglia observed swelling above Plaintiff's left eye, multiple facial contusions with swelling, and found that Plaintiff had difficulty bearing weight upon his left ankle, which was tender and slightly swollen.[1] (Id. at 2-3.) Plaintiff was taken to

---

[1] Multiple officers who attempted to subdue Plaintiff were likewise injured during the struggle, with Defendant Kohanski receiving treatment at the infirmary for an injury to his forehead and Defendant Hayes receiving treatment at the infirmary for an injury to his left thumb. (Maginnis Decl. Ex. A at 33-

4

South Jersey Regional Medical Center ("SJRMC") for a full evaluation.  (Maginnis Decl. Ex. A at 125.)  Physicians at SJRMC performed a CAT scan and took multiple x-rays, which revealed mild soft tissue swelling above Plaintiff's eye and around his left ankle, but no fractures, displacement, or spinal compression.  (Id. at 129-35.)  Upon his release from SRJMC, Plaintiff was taken to New Jersey State Prison for observation.  (Gentilini Decl. Ex. C at 10.)  By April 2, 2008 – two days after the incident – Plaintiff's facial contusions and ankle sprain were noted to be "improving," (id. at 32), and there is no suggestion from the record that Plaintiff sustained lasting injuries.

    **B.    Procedural History**

Plaintiff filed this action on July 7, 2008 [Docket Item 1], complaining that Defendants[2] used excessive force upon him in violation of the Eighth Amendment's proscription against cruel and unusual punishment.[3]  Defendants thereafter filed the motion

---

34.)

[2]  The Defendants herein are Department of Corrections Commissioner George Hayman, Officer Daniel Hayes, and Officer Anthony Kohanski.  Plaintiff also named "BSP Administrator Mr. Sullivan" as a Defendant, but the United States Marshal was unable to locate such an individual, and service upon Mr. Sullivan was never completed.  (Docket Item 12 at 1.)

[3]  Plaintiff originally alleged that Defendants deprived him of property without due process of law, but the Court dismissed this claim in its July 14, 2008 Order.  (Docket Item 2 at 2.)

to dismiss and/or for summary judgment presently under consideration [Docket Item 28], which Plaintiff did not oppose.[4]

### III. DISCUSSION

####    A.    Standard of Review

Because Defendants have moved to dismiss and/or for summary judgment, and have submitted documentary evidence upon which they ask the Court to rely in reviewing the instant motion, the Court treats their motion as one seeking summary judgment.  Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether

---

[4] More than five months after Defendants filed their motion to dismiss and/or for summary judgment, Plaintiff sent a letter to the Court in which he enclosed "medical reports . . . from the date of the incident."  (Docket Item 43 at 1.)  These documents are duplicates of the records Defendants submitted in support of their summary judgment motion.  (Gentilini Decl. Ex. C.) Plaintiff did not file a brief or responsive statement of material facts in opposition to Defendants' motion.

6

there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).

**B.   Analysis**

1.   Claim Against Defendant Hayman

Defendants argue, and the Court agrees, that Plaintiff's claim against Defendant Hayman is premised upon a respondeat superior theory of liability which is not cognizable for claims brought pursuant to 42 U.S.C. § 1983. As the Supreme Court has made clear, it is well-established that "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson, 454 U.S. 312, 325 (1981); see

7

also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). For this reason, as the Court of Appeals stated in Rode, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs," which "can be shown through allegations of personal direction or of actual knowledge and acquiescence." 845 F.2d at 1207. The allegations of personal involvement or knowledge and acquiescence must contain "actual facts, as opposed to conclusions, connecting [the supervising official to the action in question]." Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005). In other words, such allegations "must be made with appropriate particularity." Rode, 845 F.2d at 1207; see also Giles v. Kearney, --- F.3d ----, 2009 WL 2032118, at *10 n.5 (3d Cir. July 15, 2009).

Plaintiff has not made any allegations that Defendant Hayman was personally involved in the alleged wrongs of which he complains. Construing the allegations in the Complaint generously, Plaintiff appears to allege that Defendant Hayman had on earlier occasions been informed that "prison officials" had used excessive force against other inmates. (Compl. at 5.) There is no suggestion from the Complaint or the evidence in the record that Defendant Hayman participated in, knew of, or acquiesced in the particular use of force at issue in this matter. See Rode, 845 F.2d at 1208 (where the allegations did not indicate that "Governor Thornburgh had actual knowledge of

8

Rode's alleged harassment," liability could not attach in section 1983 claim).  Nor does it suffice under section 1983 for Plaintiff to allege that Defendant Hayman had notice of other inmates' complaints that "prison officials" had used excessive force in the past.  (Compl. at 5.)  It should come as no surprise that Defendant Hayman, as the Commissioner of New Jersey's Department of Corrections, has been informed of complaints of excessive force that had previously been lodged against his employees.  But a generalized awareness of prior complaints against employees of the Department of Corrections does not suffice to establish "personal direction or . . . actual knowledge and acquiescence," Thomas v. Independence Tp., 463 F.3d 285, 298 (3d Cir. 2006) (citation omitted), and does cannot serve as the basis of a valid section 1983 claim.  See Rode, 845 F.2d at 1208.

Finding that Plaintiff has failed to allege that Defendant Hayman was personally involved in the conduct at issue in this lawsuit, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claims against Defendant Hayman.

      2.   Claims Against Defendants Hayes and Kohanski

Defendants Hayes and Kohanski argue that they are entitled to qualified immunity from Plaintiff's excessive force claim. For the reasons explained herein, the Court agrees, and will grant their motion for summary judgment.  The Court discusses the

9

principles governing its review of Defendants' qualified immunity defense, and the application of the defense in this case, in turn below.

### a.   Qualified Immunity

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

> The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting) (citing Butz v. Economou, 438 U.S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

Pearson v. Callahan, --- S. Ct. ----, 2009 WL 128768, at *6 (Jan. 21, 2009).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations.  The Court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all," id. (citation omitted), which, as the Court of Appeals has emphasized, is not a question of immunity as such, "but is instead the underlying question of

10

whether there is even a wrong to be addressed in an analysis of immunity." <u>Curley</u>, 499 F.3d at 207.  In addition, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> (internal quotations and citations omitted).  While under <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), <u>overruled in part by</u> <u>Pearson</u>, 2009 WL 128768, at *10, the qualified immunity analysis followed a "rigid order of battle," <u>Pearson</u>, 2009 WL 128768, at *8 (citation omitted), under which the question of whether a right was clearly established was assessed only if the plaintiff had adequately alleged a violation in the first place, <u>see</u> <u>Scott v. Harris</u>, --- U.S. ----, 127 S. Ct. 1769, 1774 (2007), the Supreme Court adopted a more flexible approach in <u>Pearson</u>.  As the Court explained, "[b]ecause the two-step <u>Saucier</u> procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case." <u>Pearson</u>, 2009 WL 128768, at *13.

    b. <u>Application to Plaintiff's Claims</u>

 For the reasons now discussed, the Court agrees with Defendants that Officers Hayes and Kohanski are entitled to qualified immunity from Plaintiff's Eighth Amendment claim for

11

excessive force.  Turning to the first step of the inquiry –
whether the evidence indicates that a constitutional violation
occurred, see Pearson, 2009 WL 128768, at *6 – the Court
concludes, based upon its review of the evidence in the record,
that Hayes and Kohanski did not violate Plaintiff's Eighth
Amendment rights.  As the Supreme Court has made clear, "[n]ot
every governmental action affecting the interests or well-being
of a prisoner is subject to Eighth Amendment scrutiny," and
"[a]fter incarceration, only the unnecessary and wanton
infliction of pain constitutes cruel and unusual punishment."
Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotations
and citations omitted).  Prison officials are accorded
substantial latitude where prison security, the safety of
prisoners, or the safety of prison officers is at stake:

> The infliction of pain in the course of a prison security
> measure . . . does not amount to cruel and unusual
> punishment simply because it may appear in retrospect
> that the degree of force authorized or applied for
> security purposes was unreasonable, and hence unnecessary
> in the strict sense.

Id.

In light of courts' "hesitancy to critique in hindsight
decisions necessarily made in haste, under pressure, and
frequently without the luxury of a second chance," a prisoner
alleging that an officer used excessive force in quelling inmate
activity that placed prison security or the safety of inmates or
prison staff in jeopardy cannot merely question "the

12

reasonableness of a particular use of force or the existence of arguably superior alternatives." Id. at 319, 322. Rather, in such a context, a plaintiff alleging that an officer used excessive force must establish that the officer acted "maliciously and sadistically to cause harm," causing an injury that was "more than de minimis." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 320-21).

> In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).

Applying these considerations to the facts presented in Defendants' unopposed motion for summary judgment, the Court finds that the record does not support Plaintiff's contention that he experienced a "deprivation of a constitutional right at all." Pearson, --- S. Ct. ----, 2009 WL 128768, at *6 (citation omitted). First, in light of the fact that in the moments immediately preceding the officers' use of force, Plaintiff had physically attacked Defendant Kohanski, there is no question that "the need for the application of force" existed in this case and that Plaintiff's actions constituted a serious "threat to the

13

safety of [prison] staff . . . ." Brooks, 204 F.3d at 106 (citation omitted). Plaintiff himself created an emergency situation by refusing to comply with Kohanski's orders and launching an attack upon Kohanski, and by continuing to attack the officers after he was ordered repeatedly to cease struggling. By initiating a violent disturbance that threatened the safety of prison staff, Plaintiff precipitated a situation that necessitated the application of force, and courts have consistently found that "the need for the application of force," Whitley, 475 U.S. at 321, existed in circumstances far less emergent than those for which Plaintiff was responsible. See, e.g., Fennell v. Gilstrap, 559 F.3d 1212, 1218 (11th Cir. 2009) (use of force upon inmate who was struggling to avoid being handcuffed was appropriate); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (same). Any reasonable officer, "on the basis of the facts known to [Officers Hayes and Kohanski]" in the moments preceding the use of force upon Plaintiff, Brooks, 204 F.3d at 106 (citation omitted), would have understood that Plaintiff, who punctuated his defiance of Kohanski's orders with a punch to the officer's face, posed a threat to BSP staff.

Moreover, an assessment of "the relationship between the need and the amount of force that was used" likewise does not support Plaintiff's allegations that Defendants violated his Eighth Amendment rights. Id. First, Defendants' uncontradicted

14

evidence from a witness to these events indicates that, in light of Plaintiffs' sustained combative activities and resistance to all efforts to subdue him, the officers employed "the minimum amount of force necessary" to restrain Plaintiff.[5] (Maginnis Decl. Ex. A at 17.) Moreover, there is no suggestion from any evidence in the record that Defendants continued to use force upon Plaintiff after he "had already been subdued." Hope v. Pelzer, 536 U.S. 730, 738 (2002). Instead, the evidence indicates that between the moment Plaintiff attacked Officer Kohanski and the time when he was finally handcuffed, Plaintiff "kept punching and kicking" the officers, and that Plaintiff made "several attempts to break free of the escorts by dropping to the ground and attempting to kick at the Officers" even after he was handcuffed. (Maginnis Decl. Ex. A at 22, 31.) Nothing in the record even remotely suggests that the force used under these circumstances was employed "maliciously and sadistically to cause harm," Fuentes, 206 F.3d at 345 (citation omitted); to the contrary, the record indicates that the force was employed to subdue Plaintiff's unprovoked violence and that its application was proportionate to the needs of the situation. (Maginnis Decl. Ex. A at 17.)

---

[5] While the generalized terms of such a statement could conceivably be of less significance if contradicted by more specific evidence to the contrary, it is the only evidence in the record which speaks directly to the proportionality between the force used and the need for such force.

"[T]he extent of the injury inflicted" by the officers upon Plaintiff likewise supports Defendants' argument that Plaintiff was not subjected to excessive force. Brooks, 204 F.3d at 106 (citation omitted). As a result of the officers' efforts to restrain Plaintiff and prevent him from committing further acts of violence, Plaintiff suffered facial contusions, mild tissue swelling above one eye, and a sprained ankle; Plaintiff sustained no lasting injuries. (Gentilini Decl. Ex. C at 10-32.) While these injuries are more than de minimis, see Hudson v. McMillian, 503 U.S. 1, 10 (1992), they fall far short of the injuries alleged in other prison disturbance cases in which the force used was found not to be excessive. See, e.g., Whitley, 475 U.S. at 324 (where prisoner was shot in the leg in an effort to stop a prison riot, "the order to shoot, qualified as it was by an instruction to shoot low, falls short of commanding the infliction of pain in a wanton and unnecessary fashion"); Fennell, 559 F.3d at 1219 (prisoner who struggled to avoid being handcuffed suffered multiple facial fractures in officers' effort to restrain him). In the context of a violent disturbance precipitated by Plaintiff's own unprovoked attack upon a corrections officer, the non-permanent, non-grievous nature of the injuries Plaintiff sustained does not support his allegations that he was subjected to excessive force. See, e.g., Fennell, 559 F.3d at 1219.

16

Finally, the record reveals that the officers engaged in continuous efforts to "temper the severity of a forceful response," Brooks, 204 F.3d at 106 (citation omitted), which Plaintiff frustrated by ignoring the stream of orders from the officers to cease his attack. Prior to Plaintiff's own use of force, Officer Kohanski did not apply any physical force upon Plaintiff, notwithstanding Plaintiff's sustained refusal to comply with Kohanski's repeated orders that Plaintiff vacate the "A" wing. After Plaintiff had attacked Kohanski, multiple officers, including Defendant Hayes, repeatedly ordered Plaintiff to cease his violent conduct and put his hands behind his back, but Plaintiff frustrated these efforts to limit the amount of force necessary to subdue him, in that he continued to kick and swing at the officers throughout their efforts to restrain him and even after he had been handcuffed. (Maginnis Decl. Ex. A at 12, 22, 31.) As the uncontradicted evidence in the record makes plain, Defendants attempted continuously to "temper the severity of a forceful response" through their orders to Plaintiff, Brooks, 204 F.3d at 106 (citation omitted), although their orders went unheeded.

In sum, based upon its review of the uncontradicted evidence Defendants submitted in support of their unopposed summary judgment motion, the Court finds nothing in the record to suggest that Defendants acted "maliciously and sadistically to cause

[Plaintiff] harm." Fuentes, 206 F.3d at 345 (citation omitted). Defendants employed physical force in responding to an unprovoked, dangerous, and violent disturbance of Plaintiff's own creation. The need for such force under such circumstances was readily apparent, and there is nothing in the record to suggest that any Defendant "unnecessar[il]y and wanton[ly]" inflicted pain upon Plaintiff. Whitley, 475 U.S. at 319. Finding no evidence in the record to suggest that any Defendant used unnecessary force for the purposes of harming Plaintiff, the Court concludes that no question of fact exists as to whether Plaintiff suffered "a deprivation of a constitutional right at all," meaning that Defendants are entitled to qualified immunity. Pearson, --- S. Ct. ----, 2009 WL 128768, at *6 (citation omitted).

In light of the Court's conclusion that the evidence fails to support Plaintiff's Eighth Amendment claim, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, even if a jury question existed as to the issue of excessive force and if the Court were to consider the remaining prong of the qualified immunity analysis – "whether it would be clear to a reasonable officer [in Hayes' or Kohanski's position] that his conduct was unlawful in the situation he confronted," Curley, 499 F.3d at 207 – qualified immunity would attach. These officers were confronted by

18

emergent circumstances and were forced to make decisions "in haste . . . [and] under pressure," Whitley, 475 U.S. at 319 – precisely the circumstances under which a particular application of force in the prison context is not subject to "critique in hindsight," id., so long as the force was not employed "maliciously and sadistically to cause harm." Fuentes, 206 F.3d at 345. As the Court explained, supra, no evidence of such malicious or sadistic use of force exists in this case.

There is, moreover, no shortage of cases holding that an application of force in excess of that used herein under circumstances less emergent than those at issue herein did not rise to the level of an Eighth Amendment violation. See, e.g., Fennell, 559 F.3d at 1218-19; Cockrell v. Sparks, 510 F.3d 1307, 1311-12 (11th Cir. 2007); Williams v. Benjamin, 77 F.3d 756, 762-63 (4th Cir. 1996); Giles v. Kearney, 516 F. Supp. 2d 362, 368-70 (D. Del. 2007). In light of this authority, and in view of the dangerous, emergent circumstances these officers faced, their use of force upon Plaintiff manifestly did not result from "incompeten[ce]" or a "knowing[] violat[ion of] the law." Curley, 499 F.3d at 206 (citation omitted). The Court thus agrees with Defendants that Officers Hayes and Kohanski are entitled to qualified immunity, and will grant their motion for summary judgment.

19

**IV.  CONCLUSION**

For the reasons discussed above, the Court will grant Defendants' motion for summary judgment in its entirety.  The accompanying Order is entered.


**August 5, 2009**                                    **s/ Jerome B. Simandle**
Date                                                  JEROME B. SIMANDLE
                                                      United States District Judge